in the sum of $8,000; and to secure this debt executed a deed of trust to C. C. Lee, as trustee, conveying the same estate as was conveyed in the deed from Lee to Somerville, to said trustee. That $7,000 had been conceded as having been paid, and was credited on the note secured by the said deed of trust. The only controversy was as to whether the draft of $1,000 should be credited as part payment of the $8,000, or not. The complainant claimed that it was to be credited when the amount was received, and it having been received, it ought to be credited. The defendant held that it was no part of the $8,000, that the draft was drawn by Somerville before the deed of trust was executed, and could not have been received as part of the amount stated in the deed of trust. A letter was exhibited from Henry Lee to Somerville in which was recited a letter from C. C. Lee, that he (Somerville) claimed that the $1,000 should be credited on the amount due, but referred him to his brother, C. C. Lee, who was his attorney, having his power of attorney to do what he should think right and proper. The deposition of one of the justices of the peace who were present at the execution of the deed of trust and witnessed its execution, and being one of the justices of the peace before whom the deed was acknowledged, was offered as evidence, and it was allowed to be given notwithstanding the objection of the defendant, who contended that it was an attempt to contradict a deed by parol testimony. He deposed as follows: "I understood from both Lee and Somerville that the sum of $8,000 was the only sum to be paid by Somerville. The sum Lee owed Somerville was $12,000, and $20,000 was the price required for the Pope's Creek estate. The $1,000 was an after matter, and insisted on after the deeds were executed, and the whole business stopped. Somerville said he could not raise it, but he would consult Mr. Truman, his father-in-law, and find out whether he would permit him to draw on him for it, and that the $1,000 was in part of the $8,000, and not an additional $1,000; that after the deeds were executed Mr. Lee said he could not do without $1,000 to bear his expense to Algiers, which he said must be advanced out of the $8,000. I understood from both the parties the demand of the $1,000 was made and negotiated as proposed; that it was to be in part of the $8,000 when paid; no other sums were ever spoken of."

F. S. Key for complainant.

---

## Case No. 13,173.

### SOMMERVILLE v. FRENCH.

[1 Cranch. C. C. 474.] [1]

Circuit Court, District of Columbia. Dec., 1807.

---

SOMERVILLE WATER-POWER CO. (MARTIN v.). See Case No. 9,165.

SOMMERS (SOFIELD v.). See Case No. 13,157.

---

## Case No. 13,174.

### In re SON.

[2 Ben. 153; [2] 15 Pittsb. Leg. J. 242; 1 N. B. R. 310 (Quarto, 58).]

District Court, S. D. New York. Feb. 15, 1868.

BANKRUPTCY—DISCHARGE—OBJECTIONS.

1. Specifications of objections to a discharge must not be vague and general. If they are such, they furnish no ground for refusing a discharge.

[Cited in Re Condict, Case No. 3,094.]

[2. Cited in Re Clark, Case No. 2,807, to the point that a third meeting of creditors, not being a final meeting, should not be called except for cause shown.]

[In the matter of Nathan A. Son, a bankrupt.]

In this case, a creditor filed five specifications of the grounds of his opposition to the

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

discharge of the bankrupt. They were as follows: (1) That the bankrupt has concealed part of his effects and his books relating thereto, and has not delivered to the assignee all the property belonging to him at the time of presenting his petition, with intent to defraud his creditors. (2) That, since the passage of the act [of 1867 (14 Stat. 517)], he has made fraudulent transfers of his property, and has lost portions of his property in gaming, and has admitted false and fictitious debts against his estate. (3) That he has not, subsequently to the passage of the act, kept proper books of account. (4) That he has, in contemplation of becoming a bankrupt, made transfers for the purpose of preferring creditors, and for the purpose of preventing his property from coming into the hands of his assignee, or of being distributed in satisfaction of his debts. (5) That he has been guilty of fraud in other respects, contrary to the true intent of the act, and has, since its passage, mutilated his books or securities.

S. E. Swain, for bankrupt.

Merchant, Conable & Elliott, for creditors.

BLATCHFORD, District Judge. Nothing could well be more general than these allegations. They are merely the language of section 29 of the act. They are all of them so vague that it is impossible for the court or the bankrupt to ascertain from them what specific acts or omission are relied on as grounds for withholding a discharge. The case stands as if there were no opposition to the discharge and no specifications filed, and, it appearing that the bankrupt has in all things conformed to his duty under the act, a discharge is granted to him.

[2] [I perceive, from the papers in this case, that the order to show cause against a discharge, made by the register December 30, 1867, did not contain a provision for the holding of the second and third meetings of creditors, and for giving notice thereof. The original petition in bankruptcy shows no assets except the wearing apparel of the bankrupt, and the petition for discharge, filed on the 26th of December, 1867, stated that no assets had come to the hands of the assignee. On the 3d of January, 1868, the assignee, acting under section 27 of the act, presented a request to the register, according to form No. 28, to order the second general meeting of the creditors of the bankrupt, and the register, on the 4th of January, 1868, made an order in the form of the order of form No. 28, ordering such second general meeting to be held at the same time and place fixed for the hearing on the application for a discharge, and directing notices of such meeting to be sent to creditors and to be published. They were sent and published, and the register certifies that such second meeting of creditors was held, and that the assignee then and there made due return according to form No. 35, that no assets had

come to his hands, and the deposition of the assignee to that effect, sworn to before the register on the day appointed for the hearing on the application for discharge, and for such second general meeting, is among the papers. The order for the second meeting of creditors was made before the promulgation, by this court, of the rule of January 23, 1868, directing that in case of orders to show cause, made according to form No. 51 on petitions for discharges, no meeting of creditors except the first shall be ordered or had, unless some assets shall have come to the hands of the assignee. Why the special request by the assignee was made in this case, or why the third meeting of creditors was not called as well as the second, does not appear. No second meeting of creditors under section 27, and no third or other meeting under section 28, ought to be called, and no request for any such meeting ought to be made by an assignee, unless he has in his hands some moneys out of which a dividend can be made; otherwise the whole proceeding is a useless expense and formality. It is not a prerequisite to the discharge of the bankrupt, and no creditor can in any way be benefited by it.] [2]

SONACHALL (UNITED STATES v.). See Case No. 16,352.

SON AND HEIR, The (LAKE ERIE & B. STEAMBOAT CO. v.). See Case No. 7,-995.

[2] [From 1 N. B. R. 310 (Quarto, 58).]

